in Number 24828, SPS I Fundo de Investimento v. Batista. Mr. Kaluta. Good morning, Your Honors, and may it please the Court. Nico Kaluta on behalf of the Appellant Intervenors. Intervenors' motion to stay should be granted. Both the equities and the merits strongly favor staying the District Court's discovery order until this Court can determine whether or not Petitioner has a right to that discovery in the first place under Section 1782. For today, I would like to focus first on the equities and then turn to the merits. Well, maybe I'm going to suggest that you pay more attention to the merits, but at least I have a question about the equities, which is, is there anything about this case that distinguishes it from every other appeal under Section 1728? Because as I read your papers, your argument was, well, once they have the information, they have it, and so there's kind of inherent irreparable injury, and the equities favor us. But isn't that true of every Section 1728 appeal? So, Your Honor, I think we have specific facts here that are not present in most, number one being that Barclays has already identified the documents, the protective order has been entered, so unlike in other appeals where perhaps the production won't happen immediately, here there's no question. Once the stay motion is denied, Barclays will send the documents to Petitioner, and Petitioner will then be able to look over the documents, review them. I don't know if that makes much of a distinction, because given how long it takes an appeal to be processed if it's not expedited, that's going to, even if they haven't already identified the documents and prepared to turn them over, they'll be able to do that in short order, and they'll be required to do that expeditiously if they've been ordered to produce. So, I mean, I guess I still come back to, are we talking about super trade secrets? Are we talking about something that's so extraordinary that an order that limits the use of these documents to the lawyers or something like that wouldn't solve? Sure, Your Honor, and to answer that question, I would like to take a step back and first say that this is not an ordinary discovery dispute in a civil case. This is a 1782 action. It's an ordinary 1782 action? Correct, Your Honor. Okay, so that's what we need to distinguish, because otherwise what you're arguing for, at least with respect to the equities part, at least, and especially if the merits are sort of iffy, would mean that just about every one of those appeals goes to the head of the line and gets a stay, and that doesn't seem to be our practice. Well, Your Honor, I think the argument we're making is that in most 1782 cases, the strong version of our position is that the irreparable harm would favor granting the stay. That doesn't mean you need to grant the stay in every case. You think the irreparable harm factor always favors granting a stay, because you're releasing information and the cat's out of the bag. So irreparable harm is a harm that you cannot place the parties back in the same position. We do believe that disclosing the evidence would be that type of harm, but there is a more narrower position that the court could take here that's very more specific to this case, and that is this court could grant a stay that would prevent petitioner from then sending the documents to the foreign tribunal, to the CVM. This court issued that exact type of stay in In Re Accent Delight, and it's a stay that is justified here, because once there's documents. You're saying the harm is the documents getting in the hands of the Brazilian regulator, not necessarily the opposing party. So that's so, we're making both points, Your Honor, that both are irreparable harms. I mean, fine, maybe it is the case that there's going to be irreparable harm because the cat's out of the bag, and maybe that does kind of favor a stay in every case, but doesn't that just mean, therefore, that the likelihood of success on the merits is the most important thing, that even if there's irreparable harm, if there's no likelihood of success on the merits, you're not going to grant a stay? Because otherwise, you grant a stay in every case. Well, I fully agree that the court should consider the likelihood of success on the merits, and we think we have strong views on the likelihood of success on the merits. So I'm happy to address those if that. So why don't we talk about that? So you're saying this is not for use in a tribunal, is that right? Correct, Your Honor, that's one of our arguments. But hasn't the Supreme Court told us that a tribunal can be an administrative proceeding and even an investigation? So the statute uses the language tribunal, and Intel, the Supreme Court, held that the European Commission, the ultimate decision that it reaches, that is a tribunal function. It did not say that in regards to the DG competition in the investigatory side of the European Commission's proceedings. The question, as this court has said, going all the way back to India, is whether or not the tribunal has adjudicatory power, and whether or not, and going along with that, is the impartiality. But before I get into that, I do want to take up the fundamental... Well, the Supreme Court tells us that administrative and quasi-judicial proceedings are adjudicatory, right? Well, I think that they can be. Certainly, our view is not all administrative proceedings cannot be tribunals. You have to look at the individual administrative body in question and determine whether or not it meets the understanding of tribunal. And so here, our view is that the CVM, the characteristics of the CVM in particular, render it not a tribunal. And the district court sort of glossed over that and premised its entire... Didn't you say that it was the other, the SOI subsidiary part of the administrative structure that was actually more like a tribunal? Did the district court err in rejecting that and saying that really the CVM was the one that was going to adjudicate or decide whether to proceed with any complaint filed by your adversary? Right. Well, Your Honor, so the district court premised the... The district court premised its opinion on treating the CVM as an undivided whole, right? That's the premise that petitioner has doubled down on before this court. And I think that that premise is legally flawed. But I do want to emphasize at the outset that even if you treat the CVM as a whole, reversal still follows because it's not a tribunal, even if it's looked at as a whole. And that is because of the massive... In India, it distinguished between the foreign prosecutors and the judge d'instruction, right, which stands apart from the prosecutors. So the prosecutor must appear before. That is the epitome of an investigatory magistrate. It does not prosecute. It's not the prosecutor. It's separate. It's making those decisions. But in India and in Fonseca, when the body in question both investigates, prosecutes, and adjudicates the claim, that type of concentration of power is not what we normally associate with impartial tribunals. Even when it adjudicates the claim? Well, the combination. Your Honor, I'm sorry. It's just a single body is doing all... We don't trust certain foreign agencies because they don't operate with the separation of powers that we typically do? Is that the way this is supposed to work? Well, Your Honor, the statute uses the word tribunal. Tribunal has been said by this court and the Supreme Court to have an adjudicatory connotation. Part of that is impartiality. And part of impartiality is not combining the functions, right? This court held in India and in Fonseca that exact type of concentration of power rendered the body in question not to be a tribunal. Some countries have systems that are clearly adjudicatory because it's a court, but it's a kind of inquisitorial system where the judge plays an inquisitorial role. I mean, is there any reason to think that Congress is deciding that we're going to use 1782 to impose our view of the separation of powers in other countries? No, Your Honor. And in Beauremont in 2014, this court addressed the Swiss investigatory magistrate and correctly held that that is a tribunal. We're not saying in an inquisitorial system that the judge is... Okay, so what are the characteristics of the Brazilian... You were about to say this. The Brazilian regulator here, that means it can't be a tribunal. So if you view it as a whole, it's because it has all the powers, right? We don't think you should look at it as a whole. You should look at the individual bodies in particular. What does that mean, it has all the power? So if you look at the CVM as a whole, it will both investigate the claims, it will then decide to prosecute the claims, and then it will then adjudicate the claims. Assuming you engage in the affixion that it's just one body, right? It's not one body, it's separate bodies. And that's our main argument. Our agencies, the FTC and the FEC and other groups, like there's a commission, it does an investigation and it has an adjudication within the agency. And ultimately, the commission, which is in charge of the whole thing, is the ultimate decision maker. So are you saying that all of our executive agencies are not tribunals? No, no, Your Honor. And you wouldn't cooperate with them if some other country adopted the American model? Absolutely not, Your Honor. And that is because you don't look at the agency as a whole. The final adjudicatory body, the final commission would absolutely be a tribunal. And that the FCC commissioners, when they adjudicate claims, would be acting as a tribunal. We're not disputing that. So you're saying when the FCC is doing an adjudication, it's a tribunal, but when it's doing an investigation, it's not? Correct, Your Honor. That's essentially... But isn't the litigation court saying all you need was that there's a contemplation of an ultimate ruling by the commission that will be reviewable by the foreign courts? You're absolutely right, Your Honor. And so when the FCC does an investigation and it's going in contemplation of there being an adjudication, isn't that the same thing? So you're going to the heart of the question of whether or not the ultimate adjudicatory enforced proceeding of the CVM is within reasonable contemplation, as this court has framed it. And here, this court has said you need objective indicia, objective points to show that that proceeding is in reasonable contemplation. Here, you don't have that. There's no evidence that the SOI will forward the complaint to the technical branch, that the technical branch will then initiate an investigation, and that the technical branch will then prosecute the claim. So that's different. It's not the nature of the regulator. It's that it doesn't seem like the regulator is interested in doing an investigation here. Is that the point now? Well, the point here is, Your Honor, that we don't know if it's interested in an investigation or not. And the reasonable contemplation... It's not going to be interested until they provide the evidence of wrongdoing that the regulator would like to look at. Well, even when they provide the evidence, Your Honor, there's still... We don't know what it is. We haven't shown us the complaint that they tend to submit. There's nothing for us to think in this record that would show that the CVM would initiate an investigation that would lead to an enforcement action. And the... that would be filed. And they decide that, well, there's nothing here. And then they say no. What harm has happened to anyone? Well, I guess... So the question, Your Honor... I'm not sure if I understood the question, but it's, are you still referring to the ultimate enforcement proceeding before the CVM? Right at the very beginning. Suppose the first person they give it to says, this is rubbish, goodbye. Right, so that would be the SOI. Our view is that the proceeding for the SOI is not before a tribunal, right? So that's a separate argument about the tribunal status of the SOI, right? It's sort of a weird argument for you to be making that the regulator might not be interested in this material at all, and therefore it's going to harm us tremendously if you give it to the regulator, right? So either the regulator is interested in it, there's going to be a proceeding, in which case the information is relevant, or it's not going to make any difference at all, right? Isn't that what you're saying? So are you...  You should have a stay of the information being turned over, because it seems likely that the regulator doesn't really care about the information. But if that's true, then there's really no harm to you, right? Well, we're ultimately seeking a stay, Your Honor, because we don't believe they are entitled to discovery under 1782, and we have an appellate right to come before this court for you on de novo review to determine whether or not they've met the statutory factors. Without the stay, that right is almost... Didn't the district court look into this question of whether it was likely, and the district court said, you know, there was a response from the regulator and so on, but even if the regulator refuses to act, the party can challenge that in court, and then there'd be an adjudication over whether they were required to act. So the district court... The Brazilian law gives the party the right to start an adjudication, even if the regulator is not interested in it. Doesn't that mean that the complaint is in contemplation of there being an adjudicatory proceeding? So, Your Honor, we don't dispute that the filing of the complaint with the SOI is in reasonable contemplation. That's not been our argument, but our argument is that that proceeding before the SOI and the technical branch are not proceedings before a foreign tribunal as that term has been understood. Now, the district court relied on this court's decision in San Pedro to say that the silence of the CVM, right, or the silence of the adjudicator of the foreign body when a complaint has been filed is evidence that the ultimate adjudicatory proceeding can be in reasonable contemplation. But that is not present here, and it's important to understand that the reasonable contemplation analysis, as this court made clear in certain funds, is determined when the application is filed. And when the application was filed here, petitioner had not yet filed the complaint with the CVM, so you cannot infer anything from the silence of the CVM because they had not even given the documents to the CVM to review. Without doing that, there's no objective indicia that as was present in San Pedro. If 1782 allows for discovery when there's an investigation and contemplation of an adjudication, and you just said that the complaint is in contemplation of an adjudication, then why can't there be discovery that assists in the development of the complaint? So two points on that, Your Honor. What's in reasonable contemplation is the filing of the complaint with the SOI. That's not the investigatory phase. The investigatory phase is one step removed from that. It's done by the technical branch after the SOI forwards the complaint to the technical branch. Okay, so if the technical branch... So you're saying you can't assist the private party in developing the complaint, but if the technical branch were doing an investigation and that were in contemplation of an adjudication, you could? So if the technical branch works... So you're saying it's one step too early, is that what you're saying? That's one argument. The others we have in the technical branch's investigation, we think that they would not be an interested person in that proceeding. That's a separate point. But I think that it would be a much easier case... But this point about it has to be an investigation by the technical branch and not by the private party, where do you get that in the statute? It's the word tribunal? It's tribunal, yes. You have to have a tribunal conducting the proceeding in question, right? And this Court has been clear that that includes impartiality to the sense that it's separate from the prosecutor, right? In Euro MIPA, this Court said clearly that if the body in question is acting like a prosecutor, it is really not an impartial adjudicator. That's exactly what the technical branch is doing. It's the enforcer and prosecutor of Brazilian corporate and securities law, right? And so that prosecutorial function itself, that investigation is not a proceeding before a tribunal. So by analogy, when we're talking about the U.S. agency commissions, like the SEC or the FTC or whatever, you're saying that when there's an investigation by the staff, it would not be a tribunal? The investigation... The commission is interested and there's a proceeding before an ALJ within the agency, it would be a tribunal? Correct, the investigation... So the agency would transform from a non-tribunal to a tribunal depending on the activity? We don't think it's transforming, it's just there are different parts of the branch doing separate things, but you've exactly framed the point correctly in that regard, yeah. The problem is that the private party is the one who's seeking the information here so that they can commence a process that will, in contemplation of having some kind of judicial review. Remember, in most European countries, I don't know about what is true in Brazil, and one of the problems with these cases is that we probably don't want to be spending inordinate effort figuring out complex, differing foreign legal systems. But in most European countries, there's a principle of mandatory prosecution so that if you bring something to the prosecutor that creates, in effect, probable cause, they must investigate and they must prosecute and you can get judicial review of their decision not to, which is not the case in this country. So why doesn't that make the submission of information to a prosecutor in that kind of system something that contemplates legal action by the private party who is seeking the discovery? Sure. To that question, Your Honor, I first point the court to certain funds where this court said that handing documents to a prosecutor for a potential investigation is not enough to meet the four-use factor, again, because it's not before a foreign tribunal. You know, that's from certain funds. The court made that clear there. And more importantly, in this case, you've mentioned several times that the petitioners are subject to some type of judicial review. That's not totally accurate here. There's no right at the beginning stage for a petitioner to run to a court if they refuse to investigate or refuse to reject the complaint at that stage. At anything, it goes to the CVM board, right, for a very limited review and in no occasion can CVM board actually compel an investigation. So the actual appellate rights that petitioner has at this beginning stage are not the same as an intel, for example, where if the DG competition killed the investigation at the bar, right at the start, the person who filed the complaint could go straight to court, get de novo review of that. That's a big distinction. The CVM, is that the name of it, you're saying does have what you call limited ability to review the decisions of the first order prosecutor type person within its agency? So it's very limited review in the sense that it can review the SOI's decision or the technical branch's decision for some sort of irregularities and they can send it back for more investigation, but they can't ever compel the SOI. Why aren't they a tribunal then when they're doing that? The CVM board? Well, so that may be a tribunal in that status, but again, even in that scenario, the CVM board itself and intel said to be a tribunal, you need to have appellate, there needs to be an appeal to court, right, and that's not present for the CVM board. There's no appeal to court for that scenario. Oh, but in that case, there was an appeal to court, but if the appeal is to an adjudicatory body, why isn't that a tribunal? The statute says tribunal, it doesn't say court. So I'm going to, correct, it does say court. I'm going to take a step back and just look at what petitioner has alleged. They've never alleged that the limited appellate review of the SOI or the technical branch's decision would be a tribunal. That's never been their position. Their position has always been that the ultimate enforcement action is the contemplated proceeding in question. That's the tribunal, that's the proceeding that matters, and it's that proceeding in front of that tribunal that in this point is not in reasonable contemplation, unlike it was in intel where you had the DG investigating at the time. Okay. I understand I'm way past my time. Thank you, Your Honor, very much. I appreciate it. Thank you, Mr. Kaluta. We'll turn to the respondent, Mr. Hollenbeek. Morning, Your Honors. May it please the court, Jeremy Hollenbeek on behalf of the appellee here, the petitioner in the 1782 action. Your Honors, I'd like to go straight to this question of whether the CVM is adjudicatory or not or whether it's got... Their argument seems to be when they're separate, they don't have the right qualities as a tribunal, but when you put them together, they've got too many qualities and therefore you can't do it either. But this is from their own Brazilian law expert. This is their declaration. And this is at docket 22.2, page 64, paragraph 26. In order to prevent the accumulation of powers from infringing on the impartiality during their enforcement activities, the CVM has adopted the so-called accusatorial system by separating the activities of investigation and accusation on the one side and its judging activities on the other. The formers are assigned to the superintendent offices, the SOI or technical branch, as they call it. The adjudication is given to the board of commissioners. And then it concludes, accordingly, the superintendent offices, mainly comprised of career employees, do not take part in the sentencing while the commission board may not meddle in the investigations of the formulation of accusations. So their own record, their own testimony explains that the CVM is a body that both conducts investigations, makes accusations, and then those accusations are adjudicated before the board. So what they're saying is that that conflates two different aspects of the CVM, right? And we're familiar with this in our administrative law systems, many of which separate the adjudicatory functions of the agency from the prosecutorial functions so that the NLRB or the SEC have staff who conduct investigations and prosecute cases before the agency itself in the form of the ultimate commissioners or board or something like that. And what I think they're saying is that we should separate the functions too and conclude that giving information to the SOI or the technical branch, and I'm not sure whether they're the same thing or different things or whether there are three or four or five or 12 different categories of agency members, but giving it to that initial prosecutor type person is like giving it to a prosecutor, not to a tribunal. And what is your response to that? Well, my response is they are the same, the SOI and technical branch. They have a duty to investigate. Their own expert talks about that duty. Once they receive a complaint, they have a duty to conduct a review of the complaint. And if they decide we're not going to go forward with a further investigation or charges, that decision is then appealable to the CVM board for review. And why isn't this argument right? So if you're turning over documents to the technical staff that's going to decide whether to commence the investigation,  we don't know yet whether it's going to go before a tribunal. It's just going before a bunch of investigators who are deciding whether or not to build a case. So it's like giving some documents to a district attorney before we know that anything is ever going to end up in court. And when you're at that stage, then it's not a contemplation of, or you're not assisting a tribunal. You're just assisting foreign prosecutors or investigators, and that's different. What's wrong with that argument? Well, Your Honor, the statute itself compels the opposite conclusion. The words were added by Congress in 1996 that it says that you can get discovery for a proceeding before a foreign tribunal, including investigations. So the statute compels it. Interpreting that statute and the amendment, intel controls it. I mean, the procedures between what happens in the CVM and what happens before the European Commission are nearly identical or even better in our circumstances. So the amendment that says including investigations, you think, encompasses investigations and contemplation of eventually going before a tribunal? The language of the statute is accusations, or sorry, investigations before any accusation. And that's what the court decided in the Berlamont decision, where there was a Swiss investigating magistrate that the petitioner was seeking documents so that it could give over to them. There's a couple of other things I'd like to address, Your Honors. There's a separate question. Is it odd that it seems like you would be getting more assistance from a U.S. court for discovery because you're filing this complaint in a foreign proceeding than you would here?  You wouldn't get discovery until you wrote a complaint that has possible allegations that could survive the motion to dismiss, right? But here you're getting discovery assistance from a court to formulate your complaint in the first place. Does that suggest that the statute is giving you more assistance than you would get in a U.S. tribunal? And is that a problem? No, Your Honor. I think this court has addressed that in Accent of Light and other decisions. The statute also says that the statute gives the district courts wide discretion to engage in the scoping of the discovery that's appropriate for a case-by-case basis. And the court, we've got a protective order here. And to the extent that what this court and others have held is that there's not a reason because the discovery would be differently scoped in a domestic litigation, not to give assistance to foreign proceedings because there are differences in the legal system. For instance, in these other countries, civil law countries primarily, the European countries, but also Brazil is a civil law country. It's more part of their legal system to have private citizens provide complaints to government actors who then perform investigations because they don't have a discovery. But not every country needs to have the same 12B6 framework that we do, and so it's not that weird that maybe you're providing assistance at a different time. I think that's right, Your Honor. Just to correct you for a moment, section 1782 says, for use in a proceeding in a foreign or international tribunal, including criminal investigations, conducted before formal accusation. Maybe a civil thing or an administrative thing is the same, but it doesn't talk in general about civil investigations. Judge Ginsburg, Justice Ginsburg, addressed this directly in the Intel decision because that case was not a criminal investigation. That case was an antitrust claim. And she said that the legislative history demonstrates that even though Congress put the word criminal in there, it did that because it was just confirming the scope of the statute. It wasn't limiting it to criminal matters, criminal investigations. You know, I want to speak really quickly to the equitable points that were raised. They weren't. We cut them off. Understood. I would, to answer the first question that you had, though, Your Honor, is this isn't a different than any other 1782 appeal, or it's not different from their perspective. I would suggest that it's even better for them, one, because there is a protective order in place. That protective order limits our ability to use the documents when we get them. Two, it limits us to use them in the CVM, which doesn't have a public filing system. And we have to go back to Judge Kaplan below if we want to try and use them in any other proceeding. Which is a discretionary decision by Judge Kaplan. He could have gone the other way, in fact. Yes, Your Honor. So in this situation, the district court has taken steps, appropriate steps, perhaps. But they would say not enough steps to be protective. Yes. What prejudice would you suffer, though, if you were to enter a stay and expedite the appeal, looking forward to having a merits appeal? I mean, we're almost hearing the merits appeal at the moment, right? But having that heard in September, what prejudice would you suffer? Well, Your Honor, I think I would say the CVM is in charge of regulating public companies in Brazil. And what we've seen is the appellants here are admitted to have engaged in this bribery scheme. They were kicked off the board of their company, which is one of the largest companies in the world, and which we're a shareholder in. And now they are back on the board. They got appointed back to the board in April. And so one of the things I'd suggest, Your Honor, is that that wouldn't have happened if we'd have gotten this discovery two years ago when we originally received the authority to get it. They've been very successful. This is their fourth motion for a stay. This court has already rejected one motion for stay in the prior appeal on the merits, and their question presented in this appeal, in their brief, is verbatim the same as it was before. So this is another reason that this is an unusual situation. And the last thing, and I see my time is short, if I could just say and conclude. It's fine, go ahead. Something that gets lost here, but I think is an important detail. We are not seeking, we didn't subpoena Barclays for the appellant's documents, okay? There are four companies that were named as these target companies. They're not before the court. They've never appeared before the court. We have 12 document requests out to Barclays. Only one of them mentions the name of any of the people that are opposing this. And the appellants have steadfastly refused to admit that they have anything to do with those target companies because they were shell companies offshore. They're not Brazilian companies. They were shell companies through which money was funneling. So they can't say, oh yeah, those are our companies. So when they stand up, so why are they protesting so much? And when they say things like, you know, the court should deny discovery here because the CVM could just get the documents from them in Brazil. Well, I mean, that's the sort of statement that this court has rejected before, so. And what do the exact terms of the protective order mean, Will? Okay, so once we get the documents, we can provide them to CVM. When we provide them to CVM, we have to provide them a copy of the protective order and explain that these documents have been marked confidential. The confidential, the protective order says that it doesn't control that foreign body's decision, whether it wants to, you know, do something with them or not. But we give them the protective order. It then limits us from using them in any other proceeding, domestic or foreign, unless we. In a civil suit or an arbitration or something of that sort. Yes. You can't use them for anything other than giving them to the investigative body that you have cited. That's correct, without additional authority from Judge Caput. Right. Okay, thank you. Okay, thank you very much, Mr. Howell-Leak. The motion is submitted. Thank you.